**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MATTHEW SCOT TEIXEIRA, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:21-CV-00003-SDJ- |
| v. | § | CAN |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of

Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying his claim for benefits.

After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the

administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

**RELEVANT PROCEDURAL HISTORY**

On May 26, 2017, Plaintiff Matthew Teixeira ("Plaintiff") filed an application for disability

benefits under Title II ("Title II") of the Social Security Act [TR 479-82].  Plaintiff alleges

disability due to back impairments and irritable bowel syndrome, and an onset of disability date

of February 1, 2017 [TR 479, 525].  Plaintiff was born on March 3, 1972, making him forty-four

(44) years of age at the time of alleged onset [TR 207, 323, 479].  Plaintiff's age classification at

all relevant times was "younger person."  *See* 20 C.F.R. § 404.1563(c).[1]  Plaintiff has not engaged

---

[1] Although Plaintiff's age falls into the "younger person" age category for consideration of vocational factors, defined as "under age 50"; the ALJ's Second Decision noted Plaintiff "subsequently changed age category to a younger individual age 45-49" [TR 207].  The relevant regulation states, "in some circumstances, we consider that persons age 45–49 are more limited in their ability to adjust to other work than persons who have not attained age 45."  *See* 20 C.F.R. § 404.1563(c).

in substantial gainful activity since February 1, 2017, the alleged onset date [TR 199].  His date last insured is December 31, 2023 [TR 512].

On September 7, 2017, Plaintiff's claim was initially denied by notice [TR 283-92], and upon reconsideration on November 21, 2017, Plaintiff's claim was again denied [TR 294-307]. Plaintiff requested an administrative hearing ("First Hearing"), which was held before an Administrative Law Judge ("ALJ") on October 2, 2018 [TR 250, 375].  At First Hearing, the ALJ heard testimony from Plaintiff, Plaintiff's attorney representative, and a vocational expert ("VE") [TR 249-81].  On November 27, 2018, the ALJ issued an unfavorable decision denying Plaintiff's application ("First Decision") [TR 308-24].  On January 11, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council ("AC") [TR 406-08].  On September 5, 2019, the AC granted review and remanded the case back to the ALJ for further consideration regarding Plaintiff's mental impairments, to develop the record, and to consider new evidence presented to the AC ("Remand Order") [TR 331-35].

Plaintiff had a second hearing on February 24, 2020 ("Second Hearing") [TR 417], where the ALJ again heard testimony from Plaintiff, Plaintiff's attorney representative, and a VE [TR 217-48].  On April 17, 2020, the ALJ issued an unfavorable decision denying Plaintiff's application upon remand ("Second Decision") [TR 194-208].  After hearing testimony, conducting a review of the facts of Plaintiff's case, and considering the AC's Remand Order, the ALJ made the following sequential evaluation [TR 199-208].[2]  At step one, the ALJ found Plaintiff had not

---

[2] Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability.  20 C.F.R. § 404.1520.  First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled.  *Id.* § 404.1520(b).  Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience.  *Id.* § 404.1520(c).  Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1.  *Id.* § 404.1520(d).  Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she can perform her past work based on her residual functional capacity.  *Id.* § 404.1520(e).  Finally, a claimant who cannot return to her past work is not

engaged in substantial gainful activity since February 1, 2017, the alleged onset date of disability [TR 199].[3] At step two, the ALJ found Plaintiff has the following severe impairments: cervical spine disorder, post-surgery, lumbar spine disorder (all related diagnoses pertaining to the claimant's spine impairments have been considered within the functional impact), sensorineural hearing loss/tinnitus, obstructive sleep apnea, chronic pain disorder, obesity, depressive disorder, anxiety disorder, and autism spectrum disorder [TR 200]. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) [TR 200-02]. At step four, the ALJ determined Plaintiff has the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except requiring the option to use the cane for distances over 100 feet or over rough or uneven terrain. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He should never climb ladders, ropes, and scaffolds. He can frequently but not constantly reach, handle, and finger objects and operate foot controls bilaterally. He should avoid hazards such as dangerous moving machinery and unprotected heights. He can work in at most a moderate noise environment. The claimant can understand, remember, and carry out simple tasks and instructions. He cannot work at a production rate pace.

[TR 202-04]. Continuing the step four analysis, the ALJ determined that Plaintiff is incapable of performing past relevant work as actually or generally performed [TR 206-07]. At step five, the ALJ determined that Plaintiff remains capable of performing work available in the national economy. More specifically, the ALJ found:

_____

disabled if she has the residual functional capacity to engage in work available in the national economy. *Id.* § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability, and at the last step, the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

[3] The ALJ noted that Plaintiff did temporarily work after the alleged disability onset date, but that such work activity "did not rise to the level of substantial gainful activity" [TR 199].

If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28 and Rule 201.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as the following *sedentary, Specific Vocational Preparation 2, and unskilled jobs in the national economy*:

- ***Document preparer***, DOT # 249.587-018 with 46,850 jobs;
- ***Election clerk***, DOT # 205.367-030 with 15,545 jobs;
- ***Addresser***, DOT # 209.587-010 with 4,690 jobs.

[TR 207-08] (emphasis in original). Based on this determination, the ALJ concluded Plaintiff was not disabled from February 1, 2017, through the date of the ALJ's decision [TR 208]. Plaintiff once more requested review by the AC of the ALJ's Second Decision [TR 476-78]. The AC denied Plaintiff's request on November 5, 2020, making the Second Decision the final decision of the Commissioner [TR 1-7].

On January 4, 2021, Plaintiff filed the instant suit [Dkt. 1]. Plaintiff filed his Opening Brief on September 29, 2021 [Dkt. 17]. Plaintiff argues "the sole issue in this case is whether the ALJ provided sufficient rationale for rejecting the opinions provided by treating physician and pain specialist Robert Chen, M.D." ("Dr. Chen") [Dkt. 19 at 1]. In support of this issue, Plaintiff advances that: (1) "although the treating physician rule has been modified, the ALJ must still [under SSR 96-8p] reconcile his RFC with [Dr. Chen's conflicting opinion]"; and (2) the ALJ's opinion makes clear he mistakenly rejected Dr. Chen's opinions based upon Dr. Chen's estimate of when Plaintiff became disabled and the "underwhelming" clinical findings [Dkt. 17 at 11-16]. The Commissioner filed its Brief on November 29, 2021 [Dkt. 18], and Plaintiff filed his reply brief on December 6, 2021 [Dkt. 19].

## RELEVANT MEDICAL RECORDS

Plaintiff challenges the ALJ's rationale for rejecting the opinions of Dr. Chen, specifically those opinions related to Plaintiff's manipulative limitations, need for unscheduled breaks, and absenteeism. As such, the Court outlines Dr. Chen's treatment records and medical source statements, and then further summarizes the medical opinions and evaluations from providers Dr. Rob Dickerman, D.O. ("Dr. Dickerman"), Dr. John Lavery, M.D. ("Dr. Lavery"), Dr. Joseph Vaughn Jr. ("Dr. Vaughn"), and State Agency Medical Consultants Dr. Patty Rowley, M.D., and Dr. Brian Harper, M.D. (together, "SAMCs") relevant to the referenced limitations.

### Treating Physician – Dr. Chen

Plaintiff sought care from Dr. Chen for pain management. On August 7, 2017, Plaintiff presented to Dr. Chen for pain management related to pain in his back, neck, and extremities [TR 825-30].[4] Dr. Chen's physical examination found Plaintiff had tenderness to palpitation in the neck, abnormal range of motion in the neck, some decreased sensation to pinprick in the upper extremities, bilateral reflexes intact, some motor strength weakness in the elbows and wrists, but with full ROM in the shoulders, elbows, and wrists without any pain, and ambulation without assistance of a walker or cane but has mild balance issues [TR 828-29]. Dr. Chen assessed Plaintiff as having ankylosing spondylitis in lumbar region and cervicalgia, in addition to chronic pain syndrome and low back pain with unknown duration [TR 829-30]. On April 27, 2018, Dr. Chen administered a physical exam that found Plaintiff's station/gait as "ambulatory," specifically that he "doesn't use a cane or walker to ambulate" though his gait was "stiff" and "Frankenstein"-like [TR 962].[5] Regarding motor function, Dr Chen indicated Plaintiff has "5-/5" motor strength

---

[4] This record from Dr. Chen, among others, appears multiple times in the record [TR 788-802] (Exhibit 17F). As the ALJ's opinion cites to the record in Exhibit 21F, the Court will refer to that version [TR 825-30].

[5] The treatment record from April 27, 2018 also appears in the record twice [TR 913-18, 962-64], and the ALJ cites to each record at different times in the opinion, Exhibit 27F and Exhibit 32F [TR 203-04].

bilaterally throughout, with abnormal flexion/extension of the hip, normal flexion/extension of the knee and the ankle, and "no atrophy, tremors, of fasciculations" [TR 962]. Plaintiff also had "5-/5" motor weakness in his upper left extremity to abduction/adduction compared to his right side, though he had "5/5 motor strength" to his elbow flexion/extension and wrist grip strength [TR 962]. Plaintiff had no coordination problems, identified as "steady and show[ing] good balance" [TR 962]. Dr. Chen noted some decreased sensation but "no gross clinical neurosensory deficits" [TR 962]. As treatment, Dr. Chen discontinued hydrocodone "due to poor efficacy" but continued other pain medications, including use of a lidocaine patch [TR 963-64]. On May 25, 2018, Dr. Chen saw Plaintiff again, recording the same physical exam findings, including that his strength was 5/5 with "give away weakness and diffuse deficits" and recommending the same treatment path as the previous visit [TR 953-56].[6] At another visit on July 13, 2018, Dr. Chen noted Plaintiff had negative straight leg raise [TR 971-81].[7] On December 28, 2018, records for Dr. Chen again indicate substantially the same physical exam findings, with the addition that Plaintiff's "Frankenstein-like gait" was "slightly improved" that day [TR 1093]. Dr. Chen's objective findings also indicate no coordination problems were identified, and Plaintiff was steady with good balance, as well as 5/5 motor strength to elbow and for wrist grip strength, despite some decreased sensation to light touch in the left upper and lower extremities [TR 1093]. Dr. Chen adjusted Plaintiff's medications and treatment plans for his various back and neck conditions, including a repeat series of lumbar bilateral medial branch blocks, which Plaintiff reported gave him 80% improvement in his lower back pain [TR 1099].

During Plaintiff's course of treatment, Dr. Chen completed two checkbox form Medical Source Statements opining on Plaintiff's physical residual functional capacity. On May 4, 2017,

---

[6] This record also appears twice, as Exhibit 32F2-5, and as Exhibit 27F6-9 [TR 919-22].
[7] This record, again, appears twice and is cited by the ALJ in two instances, including Exhibit 44F5 [TR 1351].

Dr. Chen completed the first Medical Source Statement ("First MSS") indicating that, in an 8-hour workday, Plaintiff could sit for 5 hours per day, stand/walk for 1 hour per day, and lie down/recline for 2 hours per day "due to pain, fatigue & weakness" [TR 712].  Plaintiff could sit and/or stand for 15 minutes at a time without needing to change position [TR 712].  Plaintiff would need to alternate between sitting and standing "as needed/at will," but that it would not accommodate Plaintiff's pain to alternate without also allowing Plaintiff to "walk it off" for 15 minutes [TR 712-13].  Plaintiff could reach in all directions, handle objects, and finger "occasionally" [TR 713].  Dr. Chen indicated that the "objective, clinical findings" that support these limitations include decreased range of motion, tender points, spinal deformity, muscle spasm, decreased sensation, MRI, and surgical observations [TR 713].  Plaintiff's average degree of pain was moderate to severe, which would lead Plaintiff to be off task "over 15 minutes per hour" [TR 713-14].  Dr. Chen further opined that Plaintiff would need frequent unscheduled rest breaks during the day and would "probably miss work" due to exacerbated pain/symptoms "frequently," which the form defined as 4 or more days per month [TR 714].  Dr. Chen indicated "Yes," that Plaintiff's allegations of pain and other symptoms were "reasonably consistent" with medical findings [TR 714].  On August 28, 2018, Dr. Chen completed a second Medical Source Statement ("Second MSS") [TR 946-47].  Responding to a substantially similar checkbox form as the First MSS, Dr. Chen indicated that, out of an 8-hour work day, Plaintiff could sit for 1 hour per day, stand/walk for 1 hour per day, and lie down/recline for 2 hours per day, with these limitations due to "pain, weakness, fatigue, [and] numbness in the extremities" [TR 946].  Notable, the checkbox form directs the physician to indicate the total number of hours Plaintiff could spend sitting, standing/walking, and lying down/reclining – the three postures offered – specifically instructing the completing physician that the total for all three options "must equal 8 hours" [TR 946].  Dr.

Chen's response for all three postures adds to only 4 hours out of the 8 hours as required by the question. Plaintiff could sit and/or stand for 15 minutes at a time without needing to change position [TR 946]. Dr. Chen's opinion as to Plaintiff's need to alternate between standing and sitting at will remain mostly unchanged, except that Plaintiff would need 10-15 minutes to "walk it off" [TR 946], also checking a separate box that Plaintiff would need to "walk it off" for "over 15 minutes per hour" [TR 947]. Dr. Chen's opinion did not change that Plaintiff would "frequently" need unscheduled rest breaks and would "probably miss work" due to exacerbated pain/symptoms "frequently," 4 or more days per month [TR 947]. Dr. Chen again indicated Plaintiff's allegations of pain and other symptoms were "reasonably consistent" with medical findings. Dr. Chen concluded Plaintiff's limitations "became disabling" "four years [ago] or more" [TR 714]. The area provided for comments was left blank.

### Treating Physician – Dr. Dickerman

Dr. Dickerman first treated Plaintiff in May 2016, when he underwent a cervical posterior decompression and ACDF procedure [TR 639-46, 697, 698]. At his May 26, 2016 follow up visit, Plaintiff's x-rays "look[ed] great," his hardware was intact, and he was given painkillers and lidocaine patches for further care [TR 697]. On March 28, 2017, Plaintiff presented to Dr. Dickerman complaining of pain, but "[t]here is nothing further neurosurgically to treat" [TR 696].[8] Dr. Dickerman noted that Plaintiff needs rheumatology care, but that he was already referred to Dr. Lavery and looking for a second opinion, which he was provided [TR 696].

---

[8] The records from Dr. Dickerman appear multiple times in the record. The ALJ cites to both these records and to an additional copy (Exhibit 31F) [TR 949-51].

**Treating Physician – Dr. Lavery**

On March 11, 2017, Plaintiff presented to Dr. Lavery for treatment by a rheumatologist [TR 1230-34].  Dr. Lavery's physical examination included detailed musculoskeletal findings relevant here:

- Motor strength and tone: normal tone and motor strength, joints, bones, and muscles: no contractures, malalignments, tenderness, bony abnormalities, or synovitis in peripheral joints and normal movement of all extremities.
- Right and left shoulders: no tenderness, erythema, warmth, or objective synovitis and good range of motion ("ROM") in each
- Right and left elbows: no tenderness, erythema, warmth, or objective synovitis and good ROM in each
- Right and left wrists: no tenderness, erythema, warmth, or objective synovitis and good ROM in each
- Bilateral hands: no symptoms
- Right and left hands: no erythema, deformities, tenderness, warmth, trigger finger, or objective synovitis and good finger ROM in each
- Cervical spine: no tenderness or spasm, but decreased flexibility and ROM limited per age
- Thoracic spine and Lumbar spine: each with tenderness to palpitation, no spasms, and ROM limited per age

[TR 1231].  Dr. Lavery additionally noted Plaintiff ambulated normally [TR 1231].  At that time, Plaintiff did not meet the criteria for rheumatoid arthritis [TR 1232].

**Treating Physician – Dr. Vaughn**

On March 31, 2018, Dr. Vaughn completed a neuropsychological evaluation of Plaintiff [TR 1331-46].  Plaintiff "ambulated independently" and "his gross and fine motor skills were intact on informal observation" with "no signs of tremor, ataxia, gait, rigidity, or atypical movements" [TR 1335].  Plaintiff's Motor Functioning test results and interpretation, relevant here, found:

Mr. Texeira ambulated independently. His fine motor dexterity was low average for his right, dominant hand (Grooved Pegboard: SS = 81, 10 %ile) and borderline his left, nondominant hand (Grooved Pegboard: SS = 73, 4 %ile). Additionally, his ability to copy a complex figure was within expectations (Rey figure copy). He performed within low average range on a measure of speeded visuomotor sequencing

> (Trails A: SS = 87). His performance on a measure of manual psychomotor speed was borderline for both his right, dominant hand and left non-dominant hand (Finger Tapping: SS = 72, 3 %tie). Grip strength for his dominant right was low average (SS = 81, 10 %ile) and impaired for his non-dominant left hand (SS = 67, 1 %ile).

[TR 1335]. Dr. Vaughn's concluding recommendations, to the extent they mentioned physical limitations, were limited to discussing pain management, physical therapy, neurological consultation for possible memory loss, and an ENT consultation for hearing loss and tinnitus [TR 1339-40].

### State Agency Medical Consultants

At the initial level, on August 31, 2017, Dr. Patty Rowley, M.D., completed Plaintiff's disability determination that found severe impairment for spine disorders [TR 283-92]. Dr. Rowley's determination falls after the date of the First MSS by Dr. Chen. Dr. Rowley found Plaintiff's statements about the intensity, persistence, and functionally limiting effects of his stated symptoms were not substantiated by objective medical evidence [TR 288]. More specifically, Plaintiff's statements about his symptoms were only partially consistent with the total medical and non-medical evidence in the file [TR 288]. As to his RFC, Dr. Rowley found Plaintiff has exertional limitations for: lifting/carrying occasionally of 50 pounds, and frequently for 20 pounds; standing and walking with normal breaks for about 6 hours in an 8-hour workday; and sitting for about 6 hours in an 8-hour workday with normal breaks [TR 289]. Plaintiff did not have postural limitations or manipulative limitations [TR 289]. The RFC additional explanation notes moderately decreased ROM in the back, but with strength and sensation intact [TR 289]. No assessment was made of Plaintiff's capacity to perform past work; however, this was found not material because Plaintiff's RFC, age, and education direct a finding of not disabled based on the Medical-Vocational Guidelines [TR 290]. Upon consideration, Dr. Rowley found Plaintiff not disabled [TR 291].

On reconsideration, on November 9, 2017, Dr. Brian Harper, M.D., found no change in condition after the consideration of new evidence provided [TR 300]. Considering the consistency, supportability, and other relevant factors, the new medical evidence and subjective report from Plaintiff were found consistent with the initial level determination and medical record evidence [TR 305]. Dr. Harper reached the same conclusion as at the initial level, finding Plaintiff was not disabled [TR 306-07].

### Other Treating Physicians and Examinations

Plaintiff has been treated by numerous other physicians, and multiple other records containing their objective medical findings are in the record. Those discussed by ALJ, as relevant here, include: (1) Joshua James, M.D., April 20, 2017 [TR 703-04], finding normal gait (9F5; 12F4), normal joint findings from musculoskeletal exam (9F5), and sensory exam normal and motor exam shows normal strength bilaterally (9F6; 14F4); and (2) Surekha Gangasani, M.D., examination on April 27, 2017 [TR 721-24], finding no focal deficits observed (12F4), and range of motion moderately decreased (12F5).

### STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021)) (cleaned up); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence "need not be a

preponderance." *Webster*, 19 F.4th at 718 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are resolved by the ALJ; the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

The RFC is an assessment based on all the relevant evidence of a claimant's maximum ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. § 404.1545(a); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is the most a claimant is able to do despite his or her physical limitations. The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ is not required to incorporate limitations in the RFC he or she finds unsupported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

Plaintiff challenges the ALJ's evaluation of Dr. Chen's medical opinions, arguing the ALJ failed to provide adequate explanation of the rejection of his work-related limitations [Dkt. 17]. Relevant to Plaintiff's issues on appeal, the Social Security Administration recently revised the regulations concerning how the agency considers medical opinion evidence. The ALJ's treatment

of medical opinions in this case is governed by the revised rules in 20 C.F.R. § 404.1520c, applying to claims filed after March 27, 2017. The old rule required the ALJ to give a treating physician's opinion "controlling weight" in the absence of specific mitigating factors, and to "always give good reasons" in the determination for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). The new rule eliminates the "controlling weight" given to treating physicians that was mandated in the past. *Id.* § 404.1520c(a); *Pearson v. Comm'r*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021), *report and recommendation adopted*, No. 1:20-CV-00166-HSO-RPM, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021). Indeed, the new rule, § 404.1520c, was intended to enable courts to focus on the content of the evidence rather than on the source, *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021),[9] and to that end, it expressly provides that the ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, the ALJ shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. *Id.* § 404.1520c(a), (c)(1)-(5). Supportability and consistency are the most important factors. *See id.*

---

[9] *See also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853, 2017 WL 168819 (Jan. 18, 2017) (commenting that the rule change would enable courts to focus on "the content of the evidence [rather] than on the source" and that "these final rules help eliminate confusion about a hierarchy of medical sources and instead focus adjudication more on the persuasiveness of the content of the evidence").

§§ 404.1520(b)(2), 404.1520c(a). Supportability means the degree to which objective medical evidence supports the medical opinion at issue, and consistency looks to the consistency between different medical opinions across the record. *Id.* § 404.1520c(c)(1)-(2).[10] Important to the Court's analysis here, the new rule also changed the articulation requirements for how the ALJ considers each medical opinion:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

*Id.* § 404.1520c(b)(1)-(2); *see Moore v. Comm'r*, No. 3:20-CV-241-SA-DAS, 2021 WL 2834395, at *2 (N.D. Miss. July 7, 2021) (finding that the medical source regulations do not "obligate the ALJ to incorporate every limitations suggested by the [medical source] report, nor do the regulations require the ALJ to expressly address the persuasiveness of every opinion within every report"); *Turner-Clewis v. Saul*, No. 4:20-CV-372-A, 2021 WL 2302770, at *5 (N.D. Tex. May 19, 2021) (citing 20 C.F.R. § 404.1520c(b)(1)), *report and recommendation adopted*, No. 4:20-CV-372-A, 2021 WL 2291738 (N.D. Tex. June 4, 2021).[11]

---

[10] "With respect to 'supportability,' 'the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase,'" and consistency is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Luckett v. Kijakazi*, No. 4:20-CV-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)) (quoting *Vellone v. Saul*, No. 1:20-CV-00261-RAK-HP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021)).

[11] *See also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5857 (commenting that "it is not administratively feasible for us to articulate how we considered all of the factors for all of the medical opinions and prior administrative medical findings in all claims. As we noted earlier in the preamble, our goal in these final rules is to continue to ensure that our adjudicative process is both fair and efficient. We have an obligation to treat each claimant as an individual and to decide his or her claim fairly. We also have an obligation to all individuals

### *The ALJ Adequately Evaluated Medical Opinions in the Record*

Plaintiff argues that while the rule for evaluating medical opinions has been modified, Social Security Ruling 96-8p ("SSR 96-8p")[12] continues to apply; therefore, where, as here, the RFC assessment conflicts with an opinion from a medical source (Dr. Chen), the ALJ must still explain in detail why each opinion was not adopted [Dkt. 18 at 11-15]. Contrary to Plaintiff's argument, the ALJ did adequately explain why Dr. Chen's opinions were not adopted, providing an appropriate narrative discussion of the evidence in the record and how such evidence supports the RFC conclusion. *See Anastasia J. v. Kijakazi*, No. 4:20-CV-2731, 2022 WL 1176753, at *4 (S.D. Tex. Mar. 31, 2022) (citing *White v. Astrue*, No. 4:10-CV-426-A, 2011 WL 4907377, at *4 (N.D. Tex. Oct. 14, 2011)) ("The ALJ's decision satisfies the narrative discussion requirements of SSR 96-8p. The ALJ's RFC determination pointed to specific, relevant evidence to support her conclusion."), *report and recommendation adopted sub nom. Jarreau v. Saul*, No. 4:20-CV-02731, 2022 WL 1172991 (S.D. Tex. Apr. 19, 2022). To begin, the ALJ's assessment of Dr. Chen's First MSS and Second MSS makes distinct findings as to the persuasiveness of Dr. Chen's rejected functional limitations:

> Dr. Chen provided two opinions, one in August 2018 and the other in May 2017 (10F; 30F). Dr. Chen opined that the claimant could never lift up to 10 pounds; he also noted postural and manipulative limitations, as well an off task over 15 minutes an hour opinion (10F). These opinions are minimally persuasive, as Dr. Chen provides no supporting rationale. Furthermore, his opinions are inconsistent with much of the evidence, which shows underwhelming, intact, and normal objective findings (9F5-6; 12F4; 14F4). The notion that the claimant has been this limited

---

to provide them with timely, accurate determinations and decisions. Our experience since 1991 using the treating source rule shows that the articulation requirement in the current rule, which requires adjudicators to address each opinion, rather than addressing the opinions on a source-level, does not always foster those two goals. Accordingly, we believe it is appropriate to revise the articulation requirement in our current rules.")

[12] *See* SSR 96-8p, 61 Fed. Reg. 34474, 34475-78, 1996 WL 374184 (July 2, 1996). Plaintiff quotes only a portion of 96-8p's section on medical evidence:

> Medical opinions. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

*Id.* at 34478.

since 2014 is wildly implausible, given the claimant's empirical work activity (10D; 5E). Such a view is, in fact, so contradictory to the evidence of record that it reduces the probative value of the opinion as a whole. Dr. Chen's findings are also not consistent with findings of other physicians upon examination.

[TR 206]. Thus, while Plaintiff asserts "the ALJ's decision says comparatively little of the other opinions Dr. Chen provided," the ALJ addressed both the supportability and consistency of the opinion at the source-level, which is all the new regulations require. There is simply no requirement under the new rule that the ALJ address each specific opinion when a single physician provides multiple opinions. *See Hill v. Soc. Sec. Admin.*, No. CV 20-2397, 2022 WL 307383, at *5 (E.D. La. Feb. 2, 2022) (citing 20 C.F.R. § 404.1520c(b)(1)) ("When one medical source provides multiple opinions, the ALJ is not required to articulate how he 'considered all of the factors for all of the medical opinions,' but instead should articulate how he considered those opinions 'together in a single analysis using the factors' listed" in the regulation); *Richardson v. Kijakazi*, No. 8:20-CV-1107-AEP, 2021 WL 3879049, at *4 (M.D. Fla. Aug. 31, 2021) (citing *Adams v. Comm'r*, 586 F. App'x 531, 534 (11th Cir. 2014)) ("the ALJ does not need to address every finding set forth by a medical source"); *Dennis v. Comm'r*, No. 2:20CV133-TBM-RPM, 2022 WL 590024, at *2-4 (S.D. Miss. Jan. 26, 2022) (highlighting the differences between the old and new medical opinion rules where the ALJ incorrectly applied the new persuasive analysis), *report and recommendation adopted*, No. 2:20-CV-133-TBM-MTP, 2022 WL 586772 (S.D. Miss. Feb. 25, 2022); *see also* 20 C.F.R. § 404.1520c(b)(1).

In addition, a facial review of the determination makes clear, contrary to Plaintiff's further argument, the ALJ did not reject all of Dr. Chen's medical opinions "in their entirety based solely on the [ ] questionable estimate" of Plaintiff's disability onset date [Dkt. 17 at 12]. Rather, the ALJ found Dr. Chen's opinions "minimally persuasive" due to lack of supportability of the degree and severity of the limitations in both the First and Second MSS. The ALJ pointed to

specific medical evidence of record showing intact and normal objective findings, citing Exhibits 9F, 12F, and 14F, as contrary to Dr. Chen's findings [TR 206]. Dr. Chen's "implausible" opinion regarding the onset date was merely utilized to highlight the lack of supportability. Physical examinations found Plaintiff had normal ROM in the neck, normal gait, normal joints in the upper and lower extremities, and normal motor strength bilaterally [TR 206, 703-04].[13] Further, neurological objective exam findings indicated motor strength of 4/5 in all muscle groups, no tremors in the hands, reflexes symmetric at biceps, triceps, and other muscles, normal gait findings, and the ability to ambulate without any assistance [TR 753-54].[14] Plaintiff's assertion also ignores the remaining parts of the ALJ's decision where the ALJ addressed the medical evidence and opinions that were inconsistent with Dr. Chen:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. As it relates to the claimant's cervical spine disorder, post surgery, lumbar spine disorder, all related spinal impairment, and chronic pain disorder, he underwent a cervical compression, and subsequent x-rays looked great (8F1). His gait was normal (9F5; 12F4). *Musculoskeletal examination showed normal joint findings (9F5). Sensory examination showed normal findings; motor examination showed normal strength bilaterally (9F6; 14F4).* No focal deficits were observed (12F4). *His range of motion was moderately decreased (12F5).* Imaging showed degenerative disc disease and osteoarthritis of the cervical spine; his congenital fusion with no hardware fracture or migration was also seen (13F8, 10). After his cervical decompression and ACDF, he was told that there was nothing more that could be done medically (31F2). Imaging showed lumbar vertebral wedging (13F13). He was assessed to have ankylosing spondylitis in the lumbar region and cervicalgia (21F7-8). However, rheumatologist Dr. Lavery stated that he did not have ankylosing spondylitis (31F2). He exhibited a negative straight leg raise (34F6). April 2018 examination notes indicated that the claimant was ambulatory and did not use a cane or walker to ambulate; however, he had a very stiff, almost "Frankenstein" like gait (27F3). Upon consultative examination, he ambulated independently (43F6). *His gross and fine motor skills were intact on informal*

---

[13] Exhibit 9F/5-6, cited by the ALJ, corresponds to pages 703-04 in the transcript, which the Court notes for ease of reference.
[14] Exhibit 14F/4 corresponds to transcript page 753.

*observation (43F6). His grip strength was low average for his dominant right hand and impaired for his left hand (43F6).* He was prescribed numerous medications for his back pain and chronic pain disorder including tablets, injections, and Lidoderm patches (32F4, 12). He was on opiates for at least two to three years due to his chronic pain syndrome (37F2). *The record again notes observations of steady gait, good balance, and lack of sensory deficits, despite the claimant's allegations of difficulty with ambulation and numbness complaints (36F10, 24). Additionally, his strength measured 5/5 with "give away weakness and diffuse deficits" (26F9-10).* However, other doctors noted a stiff gait or the use of a cane (44F5; 42F8, 14; 27F3).

. . . .

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the record. *The record contains notations of steady gait and no need for assistive devices, as well as stiff gait and the use of a cane (36F10, 24; 9F6; 14F4; 12F4; 27F3; 44F5; 42F8, 14).* Mental status examination showed mostly normal findings of intact memory and judgment, despite his reported memory loss (12F4; 43F7). Although examination revealed his weakness to sustain attention for extended periods of time, he could also maintain attention on tasks like computer programming outside of flares (43F9; 44F2). Nonetheless, to accommodate the claimant's alleged limitations, the residual functional capacity assessment limits the claimant to understanding, remembering, and carrying out simple tasks and instructions and contemplates that he cannot work at a production rate pace. Such limitations are intended to account for the claimant's reduced ability to sustain attention and deficits during flares; the claimant's functioning is greater outside of flares.

Diagnostic imaging indicative of spinal degenerative changes supports a restriction to sedentary work and no climbing ladders, ropes, and scaffolds; however, *his normal gait, strength, sensory, and motor findings support a finding that he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl (9F5-6; 12F4; 14F4). His impaired grip strength supports a finding that he can frequently but not constantly reach, handle, and finger objects and operate foot controls bilaterally (43F6).* His hearing loss and tinnitus support a limitation to work in at most a moderate noise environment and to avoid hazards such as dangerous moving machinery and unprotected heights (9F7-8; 11F3; 33F4).

[TR 203-05]. The ALJ's review of the evidence thus identifies and addresses inconsistencies between Dr. Chen's opinions and the medical evidence in the record. *See Hill*, 2022 WL 307383, at *6.[15]

---

[15] The court in *Hill* more fully explains that the ALJ's assessment and articulation of consistency and supportability must be read in full context of the RFC findings, which, like here, demonstrate the inconsistency between the degree of limitation opined by Dr. Chen and the objective exam findings:

Plaintiff further contends, that while the ALJ found the medical record "underwhelming," it "contains some of the very findings Dr. Chen cited in his report" [Dkt. 17 at 15]. But the record evidence cited by Plaintiff largely supports the limitations the ALJ incorporated in the RFC [Dkt. 17 at 15],[16] including specifically those relating to Plaintiff's degenerative spinal disease, which the ALJ found supported an RFC limited to sedentary work with no climbing ladders, ropes, and scaffold, occasionally climbing ramps and stairs, frequent but not constant reaching, handling and fingering, and use of a cane.[17]

---

The Court finds that the ALJ did in fact provide an explanation for finding Dr. Poche's opinion unpersuasive. Just a few paragraphs prior and quoted in full above, the ALJ stated that "[t]reatment for the claimant's degenerative disc disease has been routine and conservative in nature," that the unsteady gait "appears to be isolated, as examinations both before and after March 2019 show normal gait," that "[t]reatment notes do not reflect a prescription or recommendation for a cane," that the evidence "does not show any emergent treatment or hospitalizations for the claimant's COPD," and that "respiratory findings are consistently within normal limits upon examination." These statements are not simply summaries of the record, but rather, an explanation of the inconsistencies between Dr. Poche's assessments and the medical evidence in the record.

*Hill*, 2022 WL 307383, at *6 (internal citation omitted).

[16] Plaintiff directs the Court to consider the following objective medical examinations related to Plaintiff's spinal impairments:

MRI studies confirmed moderate spondylosis, facet arthropathy, canal stenosis, and neural foraminal narrowing of the lumbar spine. Tr. at 631, 632. They likewise demonstrated moderate cervical canal stenosis and moderate thoracic spondylosis (Tr. at 634–35), while x-ray studies revealed angulation and moderate instability of the cervical spine and retrolisthesis and reduced disc height of the lumbar spine (Tr. at 804). One physician reported that electromyogram testing confirmed seven pinched nerves.

[Dkt. 17 at 15]. The ALJ considered these severe impairments at step two, at step three when evaluating Listing 1.04 for degenerative disc disease, and at step four in developing the RFC. In fact, the ALJ considered all of Plaintiff's diagnoses related to his back conditions at step two under the severe impairment, "post-surgery, lumbar spine disorder (all related diagnoses pertaining to the claimant's spine impairments have been considered within the functional impact)" [TR 200].

[17] Plaintiff urges the record evidence cited by the ALJ in fact supports Dr. Chen's limitations, arguing:

In fact, the record contains some of the very findings Dr. Chen cited in his report (See Tr. at 713), including decreased/painful range of motion (Tr. at 722, 753, 760, 770, 765, 907, 916, 976, 1163, 1231), tenderness (Tr. at 722, 800, 907, 1231), and decreased sensation (Tr. at 723, 753, 760, 765, 778, 782, 800, 916, 976). The record likewise documents motor loss (Tr. at 753, 760, 765, 770, 775, 778, 916) and abnormal gait (Tr. at 801, 916, 976).

[Dkt. 17 at 15]. A number of these records are not "cited" in Dr Chen's report, as they are examinations and records that post-date the First MSS [*See* TR 753, 760] (records from Dr. Ali from July 7, 2017, and July 27, 2017). In other instances, the records cited discuss limitations not relevant to those the ALJ found unsupported by evidence and thus were unpersuasive as unrelated to the pertinent issue(s). For example, Plaintiff urges the ALJ erred by ignoring documented motor loss but cites to medical evidence only indicating neck and spinal ROM limits but not any related to the upper extremities, dexterity, or grip strength [*See* TR 765, 770, 775, 778, 782, 916] (citing records that consistently report physical exam findings for limited ROM for the neck, cervical spine, and lumbar spine, but "normal" examination findings for the lower and upper extremity joints); or the records indeed show Dr. Chen's exam findings are inconsistent with the limitations for "abnormal gait", including that Plaintiff ambulates without assistance

In sum, the ALJ's narrative discussion comports with the requirements of the new rule for medical opinion evidence, and SSR 96-8p, to the extent applicable. *See Grennan v. Comm'r*, No. 4:21-CV-00645-O-BP, 2022 WL 2056277, at *4 (N.D. Tex. May 23, 2022) (first quoting *Myers*, 238 F.3d at 620, then citing 20 C.F.R. § 404.1520c) ("The Administration's internal rulings like SSR 85-16 are not binding precedent, 'but they may be consulted when the statute at issue provides little guidance.' Here, however, the law regarding an ALJ's required explanation is clear: word-for-word recitations are not required so long as the explanation permits meaningful judicial review."), *report and recommendation adopted*, No. 4:21-CV-00645-O-BP, 2022 WL 2053168 (N.D. Tex. June 7, 2022); *Hubbard v. Comm'r*, No. 4:21-CV-16-JMV, 2022 WL 1538650, at *2-4 (N.D. Miss. May 16, 2022) (considering the ALJ's compliance with both the new rule and SSR 96-8p) ("the ALJ did not err in finding the opinions of Nurse Practitioner Goss and Dr. Pulsani 'not entirely persuasive.' While the ALJ did not use the 'magic words,' she included details in her opinion related to the lack of supportability and consistency of the opinions of Nurse Practitioner Goss and Dr. Pulsani sufficient to support her decision.").  The ALJ identified inconsistencies in the evidence, stated reasons why Dr. Chen's limitations were not supported by and consistent with the record, and exercised his responsibility as factfinder to weigh the evidence and choose the limitations to incorporate into the RFC assessment most supported by the record.  Ultimately, it is not the Court's role to re-weigh evidence or substitute its judgment for that of the ALJ.  *See Hill*, 2022 WL 307383, at *7 (citing *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012)) ("Plaintiff contends that Dr. Poche's opinions are clearly supported by the evidence of record, however, this Court is not permitted to reweigh the evidence and an ALJ's credibility

---

[*See* TR 801, 976] (citing Dr. Chen's August 7, 2017 exam noting "ambulates without assistance of a walker or cane but has mild balance and coordination issues," and Dr. Chen's July 13, 2018 exam, which included verbatim physical exam findings as to ambulation, except to note again that, in 2018, Plaintiff's gait improved).

determination is generally entitled to great deference. The ALJ here did not find Dr. Poche's assessments persuasive and, as stated earlier, clearly articulated the inconsistencies in Dr. Poche's records that led him to this determination."); *Freret v. Kijakazi*, No. 121CV00019HSORHWR, 2022 WL 2253788, at *5 (S.D. Miss. June 1, 2022) ("The ALJ articulated his reasons for rejecting the medical opinion of Dr. Metoyer. As required by 20 C.F.R. § 404.1520c, the ALJ considered both the consistency and supportability of Dr. Metoyer's opinion. Plaintiff is asserting that the record supports greater functional limitations than found by the ALJ, but the Court may not reweigh the evidence. While Plaintiff asserts that Dr. Metoyer's opinion supported a different conclusion, it is the sole responsibility of the ALJ to weigh the competing evidence to determine a claimant's RFC. The fact that the ALJ viewed the evidence differently than Plaintiff is not grounds for reversal."), *report and recommendation adopted*, No. 1:21-CV-19-HSO-RHWR, 2022 WL 2252964 (S.D. Miss. June 22, 2022).[18]  Remand is not warranted here at step four.

Because Plaintiff has not carried his burden at step four, the Court recommends that remand at step five is also not warranted.  The ALJ's hypothetical presented to the VE encompassed all the limitations that were ultimately recognized by the ALJ.  *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002) (affirming ALJ's decision to omit questions concerning limitations the ALJ did not recognize).   Because substantial evidence supports the RFC, the hypothetical presented to the VE was not defective.  *See Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)) (affirming ALJ's step five

---

[18] Plaintiff also seemingly advances that, under the new rule, the ALJ could not give greater weight to the opinion of the SAMCs over the opinion of Dr. Chen, the treating physician [Dkt. 19 at 6].  This is incorrect.  *See Gaunder v. Comm'r*, No. 4:19-cv-1002, 2020 WL 7091263, at *3 (N.D. Tex. Sept. 28, 2020) (finding the ALJ properly weighed the evidence under the new regulations in finding the SAMC's opinion more persuasive than the treating physician or consultative examiner), *report and recommendation adopted*, No. 4:19-cv-1002, 2020 WL 6128040 (N.D. Tex. Oct. 19, 2020); *Freret*, 2022 WL 2253788, at *4 ("The rules are now aligned to focus more on the content of the medical evidence, and there is not an automatic hierarchy for treating sources, examining sources, and then non-examining sources which must be mechanically applied.").

finding when she relied on hypothetical questions that contained only those limitations included in the RFC); *Castillo v. Saul*, No. CV H-20-1911, 2021 WL 3232453, at *6 (S.D. Tex. July 14, 2021) (quoting *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016)) ("The ALJ's hypothetical need only incorporate limitations 'recognized by the ALJ.' . . . [S]ubstantial evidence supports the limitations that the ALJ recognized and incorporated into the RFC.") (cleaned up), *report and recommendation adopted*, No. CV H-20-1911, 2021 WL 3207973 (S.D. Tex. July 29, 2021).

## CONCLUSION AND RECOMMENDATION

For the above reasons, the Court recommends the Commissioner's decision be **AFFIRMED.**

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 12th day of July, 2022.**

REPORT AND RECOMMENDATION - Page 22

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE